### J. H. BRISCOE v. THE STATE.

No. 4507. Decided June 6, 1917.

**1.—Pandering—Charge of Court—Indictment—Proof.**

Where, upon trial of pandering, the court in the first section of the charge copied the entire statute defining the offense of pandering, which contains a great many ways by which that offense may be committed, quite a number of which were not alleged in the indictment or sustained by the proof, and in the third subdivision of his charge, by reference to said first section of his charge, undertook to submit the law neither applicable to the facts nor warranted by the allegations in the indictment, the same was reversible error.

**2.—Same—Evidence—Impeaching Witness—Surprise.**

Where the wife of the defendant had made an affidavit under duress, in which she stated that her husband was aware of the fact that she had carnal intercourse with other men, etc., and she afterwards informed the district attorney that said statements made in said affidavit were false, and that her husband knew nothing about her conduct, and the State introduced her as a witness and she did not testify as desired, it was reversible error to permit the district attorney to elicit testimony from said witness which he knew would not be in accord with her affidavit and then permit him to introduce the affidavit to impeach and contradict her, as there could not be any surprise. Following Hollingsworth v. State, 78 Texas Crim. Rep., 489, and other cases.

**3.—Same—Rule Stated—Impeaching Own Witness.**

It is a well settled rule that it is error to permit the State to impeach its own witness, where such witness simply fails to remember or refuses to state facts, or fails to make out the State's case, as a mere failure to make proof is no ground for impeaching a witness. Following Goss v. State, 57 Texas Crim. Rep., 557, and other cases.

**4.—Same—Evidence—Other Transactions.**

Where, upon trial of pandering, the State over the objection of the defendant introduced evidence that his wife had carnal intercourse with other men in a county not that of the prosecution, some two or three years before they moved to the county of the prosecution, in which latter county the State's

testimony showed that the defendant sent a man to his house to have carnal intercourse with defendant's wife, upon which the prosecution was based, there was no reversible error as the State also showed that, while the couple was living in said other county he was somewhat jealous of his wife on account of the attentions which other men paid to her and that this created family friction, etc.   Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Taylor. Tried below before the Hon. Joe Burkett.

Appeal from a conviction of pandering; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Ben L. Cox,* for appellant.—On question of impeaching own witness: Skeen v. State, 51 Texas Crim. Rep., 39, and cases stated in opinion.

On question of court's charge in copying the entire statute, etc.: Clark v. State, 76 Texas Crim. Rep., 348, 174 S. W. Rep., 354.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of other transactions:   Currington v. State, 72 Texas Crim. Rep., 143.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of pandering, his punishment being assessed at five years confinement in the penitentiary.

The indictment contains six counts, presenting several phases of the statute defining pandering.  Some clause of the statute was selected and placed in these different counts.  The writer deems it necessary, in view of the authorities, to discuss two propositions, first, alleged errors in the court's charge; second, admission of testimony to which exceptions were reserved.

The court in the first section of the charge copies the entire statute defining the offense of pandering, which contains a great many ways by which that offense may be committed.  Quite a number of these were not charged in any count in the indictment.  Exception was taken to this general statement of the court, which might not be sufficiently erroneous to require a reversal, but for the fact that the third subdivision of the charge undertakes to submit the law not applicable to the facts nor warranted by the law as applied to the indictment.  It will be quoted:  .

"Now if you believe from the evidence beyond a reasonable doubt that the defendant, J. H. Briscoe, on or about October 23, 1916, the date alleged in the indictment, in the County of Taylor and State of Texas, procured, or attempted to procure, or was then and there concerned in procuring Beatrice Briscoe, a female, or by abuse of his (the said J. H. Briscoe's) position of confidence and authority or by any of the means or methods set forth above, in paragraph numbered one of this charge, defendant caused Beatrice Briscoe to enter or remain in a place or house where prostitution was then and there en-

couraged or allowed, you will find him guilty of pandering as charged in the indictment, and assess his punishment," etc.

It will be seen that in thus authorizing the jury to convict they were told that if appellant by any of the means set out in subdivision No. 1, which contained all the definitions of pandering, caused Beatrice Briscoe to enter or remain in a house where prostitution was encouraged or allowed, he would be guilty. The exception is well taken. The court is not authorized to submit any theory of the law for conviction except as charged in the indictment and supported by the facts. Many of those clauses were not charged in the indictment, and had they been charged the State did not even attempt to prove many of them; at least if the State did the evidence is not incorporated in this record.

The facts relied upon by the State substantially show that appellant and his wife lived in Abilene, prior to the alleged offense, in a home of their own, a private residence. That on or about the 23rd of October a man whose name is Fee had a conversation with the defendant with reference to finding a loose woman. He testified that appellant conveyed him within a block of his, appellant's house, where Mrs. Briscoe lived and pointed to the house, putting him out of his auto at that point; that he, Fee, went to the house and had intercourse with appellant's wife, paying her a financial consideration. Later without appellant's connivance Fee took one or two others to the house and they had intercourse with Mrs. Briscoe. There is some evidence that that house sustained the reputation of being one of ill fame and there is evidence also that Mrs. Briscoe sustained the reputation of being of loose virtue Appellant's case was the converse, and under this state of case the jury was authorized by the court's charge to find appellant guilty if he did any of the acts set out in the statute. That statute provides if any person shall procure or attempt to procure, or be concerned in procuring with or without her consent, a female inmate for a house of prostitution, or who by promises, threats, violence, or by any device or scheme shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution or shall procure a place as inmate, in a house of prostitution for a female person, or person who shall by promises, threats, violence, or by any device or scheme cause, induce, persuade or encourage an inmate of a house of prostitution to remain therein as such inmate, or any person who shall by fraud, or artifice or by duress of person or goods, or by abuse of any position of confidence or authority procure any female person to become or remain an inmate of a house of ill fame, or to enter any place in which prostitution is encouraged or allowed in this State, or to come into this State, or to leave this State, for the purpose of prostitution, or who shall procure any female person to become an inmate of a house of ill fame within this State, or who shall give or agree to receive, or give any money, or thing of value for procuring, or attempting to procure any female person to become an inmate of a house of ill fame within this State, or to come into or leave this State for the purpose of prostitution, shall be guilty of pandering. Many of these

things, as before stated, were not charged in the indictment, and there was no evidence introduced or sought to be introduced that undertook to sustain many of these clauses of the statute, yet the court authorized a conviction for a violation of any of them though not charged in the indictment. This is reversible error.

There is another proposition in the case that will require reversal. Appellant's wife was used as a witness by the State. She did not testify as desired for the State; in fact, her testimony would show that her course of conduct while illicit was secret and hidden from appellant; that he knew nothing about it, and that while sometimes he was jealous she was able always to persuade him of the fact that she was virtuous and his suspicious were not justified. Before moving to the County of Taylor to the City of Abilene, he became sufficiently jealous of her on one occasion to kill a party. This killing occurred in a different section of the State. After appellant was arrested she went to the courthouse with a view of visiting her husband in jail. The officers took charge of her and told her they were going to put her in jail, and perhaps did so. While in their custody and under their influence and control she made a written statement before a justice of the peace which was duly signed and made into the form of an affidavit. In this affidavit her statements would show that appellant was guilty of pandering, and permitted, if not procured, her to sell her body for the purpose of gain. This statement was made in October, 1916. On the 7th of March following she wrote the district attorney a letter to the effect that her affidavit was false and she would not testify as therein stated. Her letter to the district attorney is as follows:

"Abilene, Texas, March 7th, 1917.

"Mr. Rosenquest: I want to put you on notice that I was scared into signing a statement before the justice of the peace. There is no truth in it, and I was scared into signing it. Mr. Briscoe did not know anything about me making dates. I had kept it from him. He never made any dates for me that I know of.

(Signed)          "Beatrice Briscoe."

When Mrs. Briscoe failed to testify to incriminating facts, the district attorney took this affidavit and question by question, which is quite lengthy, asked her whether those statements were true or false. Without stating her testimony in this respect it is sufficient to state that she contradicted the matters set out in the affidavit, and after the district attorney finished this matter he placed in evidence before the jury the affidavit itself. To all this objections were urged. These were well taken. The State was not surprised at the testimony of this witness because she had notified the district attorney on the 7th of March prior to the trial that she would not testify as indicated in the affidavit, therefore the district attorney was not and could not have been surprised. This comes within the rule laid down by our decisions as being a failure of testimony. The rule is that a party may not place a witness on the stand under such circumstances in order

to lay a predicate for criminating facts or place such evidence before the jury under the guise of impeachment. In other words, in this case the prosecution was not authorized to put this woman upon the stand and elicit testimony which the State knew or was advised in advance would not be in accord with her affidavit and by failing to testify to the facts set out in the affidavit which would have been criminating had she so testified as a predicate for impeachment, and then introduce the affidavit or sworn statement. This was a failure of testimony. He was not surprised by her failure to swear as indicated in the affidavit because she had given him timely warning in writing. These matters have been the subject of a great many decisions. See Hollingsworth v. State, 78 Texas Crim. Rep., 489, 182 S. W. Rep., 465; Taylor v. State, 77 Texas Crim. Rep., 376, 179 S. W. Rep., 113; Willeford v. State, 36 Texas Crim. Rep., 414; Skeen v. State, 51 Texas Crim. Rep., 39; Renn v. State, 64 Texas Crim. Rep., 639. It is a well settled rule that it is error to permit the State to impeach her own witness where such witness simply fails to remember or refuses to state facts, or fails to make out the State's case. A mere failure to make proof is no ground for impeaching a witness. Bennett v. State, 24 Texas Crim. App., 73; Dunagain v. State, 38 Texas Crim. Rep., 614; Smith v. State, 45 Texas Crim. Rep., 520; Scott v. State, 52 Texas Crim. Rep., 164; Wells v. State, 43 Texas Crim. Rep., 451; Owens v. State, 46 Texas Crim. Rep., 14; Hanna v. State, 46 Texas Crim. Rep., 5; Ware v. State, 49 Texas Crim. Rep., 413; Quinn v. State, 51 Texas Crim. Rep., 155; Shackelford v. State, 27 S. W. Rep., 8; Finley v. State, 47 S. W. Rep., 1015; Knight v. State, 65 S. W. Rep., 88; Gibson v. State, 34 Texas Crim. Rep., 218; Kessinger v. State, 71 S. W. Rep., 597; Erwin v. State, 32 Texas Crim. Rep., 519; Ozark v. State, 51 Texas Crim. Rep., 106; Gill v. State, 36 Texas Crim. Rep., 589; Largin v. State, 37 Texas Crim. Rep., 574; Thomas v. State, 14 Texas Crim. App., 70; Dawson v. State, 74 S. W. Rep., 912; Goss v. State, 57 Texas Crim. Rep., 557.

There is another question the writer believes requires notice. The State over objection introduced evidence that the wife of appellant had intercourse with other parties in Tom Green County some two or three years before they moved to Abilene, in Taylor County. This testimony came from her, but she swore also that of this appellant was not aware. She stated he was somewhat jealous of her on account of the attentions he observed paid her by other men and this created some family friction which she ended by her persuading her husband there was nothing wrong about it and she always succeeded in accomplishing this. After they left that section and went to Taylor County, for something like fifteen months she did not have intercourse with men, but began it again, and it was one or more of the Abilene transactions which was used by the State as a predicate for this prosecution. The writer is of opinion that the testimony with reference to her previous life in Tom Green County should not have been introduced against the defendant. It is not shown that he was in any way connected with her

prostitution in that section, and what testimony there is in the record rather excludes that idea. This could not have entered into the case so far as he was concerned. He could not have procured a thing about which he was ignorant; and she testified that she had to some extent at least reformed and had ceased having intercourse with men for quite a while after their removal to Abilene. The writer is of opinion that the testimony under the circumstances in the case should have been confined to the transactions in Taylor County both as to predicate for appellant's conviction and as to the character of the woman as being a prostitute. They did not undertake to prove her reputation, however, in Tom Green County, but only proved by her individual acts which were unknown to appellant. As the writer understands the law the fact that she was a prostitute under this statute could be shown, and this by reason of the statute, but the State must show that the woman has been prostituted by the pander, or in some way brought to live a life of ill fame and prostitution by him. It is not enough for the appellant to be jealous of his wife, or even know that she is a prostitute. The statute requires more than this at the hands of the accused. He must be in some way guilty of inducing the woman to lead a life of shame in some of the means provided by the statute. Knowledge and want of action on his part is not sufficient. He must do something to violate the terms of the statute else he would not be a pander. The mere knowledge that the woman is a prostitute will not constitute the accused a pander. He must do something, connect himself in some way with the prostitute to induce her to act. The majority of this court believe the above last stated matters in regard to Mrs. Briscoe's acts in Tom Green County were properly admitted.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*