The STATE of North Dakota, Plaintiff
and Respondent,

v.

John IGOE, Defendant and Appellant.

Cr. No. 420.

Supreme Court of North Dakota.

Feb. 27, 1973.

Rehearing Denied April 13, 1973.

John Adams and Robert P. Brady, Asst. Attys. Gen., Bismarck, for plaintiff and respondent.

Zuger, Bucklin & Zuger, Bismarck, for defendant and appellant.

BURDICK, District Judge.

This is an appeal from two jury verdicts of guilty and the judgment of conviction entered thereon in the trial of a criminal action in the district court of Burleigh County in June, 1971, and from the order denying defendant's motion for a new trial.

The defendant, John Igoe, was tried upon five counts of an Indictment by a grand jury charging him with the sale of marijuana and the marijuana derivative THC. At the conclusion of the testimony, the state consented to a dismissal of the first three counts by reason of insufficient evidence. Count Four charged the defendant with having "Sold marijuana derivative, THC to Joe Peabody on or about August 1, 1970". Count Five charged the defendant with having "Sold marijuana to Karen Sprenger on or about August 1, 1970".

The pertinent statute governing this charge was Chapter 19–03 of the North Dakota Century Code which has been superseded by the Uniform Controlled Substances Act (Chapter 19–03.1, N.D.C.C.). Section 19–03–28, N.D.C.C., provided as follows:

"No person shall grow, sell, trade, furnish, or give away, or have in his possession, any marijuana. Any person who shall violate any provision of this section shall be punished by a fine of not more than two thousand dollars, or by imprisonment in the penitentiary for not more than five years, or by both such fine and imprisonment."

While the defendant is charged with having "sold" marijuana to Karen Sprenger, the trial court instructed the

jury that "The term 'sale' or 'sold' includes any barter, exchange, or gift, or offer therefor, and each such transaction made by a person." This definition of "sale" or "sold" may not be strictly accurate, but it had the merit of informing the jury that a gift of marijuana is a violation of the statute. See State v. Dwyer, 172 N.W.2d 591 (N.D.1969).

The defendant has made a number of specifications of insufficiency of the evidence and of errors of law. We shall deal first with the specifications of insufficiency of the evidence with respect to Count Five.

At the trial, Karen Sprenger was called as a witness by the State. She testified that she had "tried" marijuana on different occasions by smoking and inhaling it, but denied having purchased marijuana from the defendant.

At the trial, she was asked, "You are now testifying that John Igoe never gave you any marijuana?" She replied, "I can't remember of him giving me anything directly." This testimony leaves an inference that the defendant gave her marijuana indirectly. Other than this testimony of Karen Sprenger and her acknowledged testimony before the grand jury, there was no evidence adduced at the trial that would establish a delivery of marijuana by the defendant to Karen Sprenger on or about August, 1971.

Claiming surprise, the State offered to introduce testimony given by the witness before the grand jury that indicted the defendant, "to refresh her recollection, if possible, in the first instance; and, if not, we wish it in for its value as substantive evidence." The grand jury was investigating drug violations in Burleigh County. Karen Sprenger had testified before the grand jury as follows:

"Q. When is the last time you bought anything from John Igoe?

"A. I never bought anything.

"Q. If someone said that you had and they had seen you, would they be lying?

"A. They would be. He gave me some; I never bought it.

"Q. For nothing?

"A. Yes."

In the context of the inquiry then pending before the grand jury and the numerous questions with reference to marijuana put to Karen Sprenger at the trial, and her vigorous denial at the trial that the defendant had ever given or sold marijuana to her, it is reasonable to conclude that the foregoing testimony taken before the grand jury had reference to marijuana. At the trial, Karen Sprenger admitted giving the foregoing testimony, but stated that she was mistaken as to that testimony and that she was "confused" at that time.

Accordingly, if the foregoing testimony given before the grand jury could be received as substantive evidence at the trial, there would be competent evidence to establish the guilt of the defendant. It would be within the province of the jury, as the trier of the fact, to determine whether Karen Sprenger testified to the truth before the grand jury or at the trial.

The trial court ruled that her testimony before the grand jury could be used to refresh her recollection and for the purpose of impeachment, but not as substantive evidence.

This state of facts raised the question of whether the testimony of the witness, Karen Sprenger, given before the grand jury can be used as substantive evidence where she testifies at the trial and is subject to cross-examination concerning her prior inconsistent testimony.

■ The majority rule at common law has been that prior statements inconsistent with testimony of the declarant as a witness at the trial may be used to impeach the witness, but not as substantive evidence

of the facts stated. This Court has followed the majority rule. State v. Snavely, 189 N.W.2d 632 (N.D.1971); Grand Forks B & D Co. v. Implement Dealers Mut. Fire Ins. Co., 75 N.D. 618, 31 N.W.2d 495. The rule has been severely criticized by McCormick on Evidence, Sec. 39, pages 73 to 82. It has also been discarded by the Uniform Rules of Evidence, Rule 20.

The United States Supreme Court has held that a state statute which provides that "evidence of a statement made by a witness is not inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with" a statute that requires that the witness be given an opportunity to explain or deny the prior statement at some point in the trial, does not violate the defendant's right of confrontation guaranteed by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489.

In the light of the decision in *Green*, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States submitted to the United States Supreme Court a Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates. While the instant case was under consideration by this Court, the United States Supreme Court, by Order November 20, 1972, promulgated the Proposed Rules of Evidence as "Federal Rules of Evidence" for United States Courts and Magistrates to be effective July 1, 1973, unless abrogated by the Congress. Rule 801 of Federal Rules of Evidence reads as follows:

### RULE 801.

#### *Definitions.*

The following definitions apply under this Article:

(a) *Statement.* A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

(b) *Declarant.* A "declarant" is a person who makes a statement.

(c) *Hearsay.* "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

(d) *Statements which are not hearsay.* A statement is not hearsay if—

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him; or

(2) *Admission by party-opponent.* The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

56 F.R.D. 183, 293.

The Advisory Committee Note with respect to Subdivision (d)(1) reads as follows:

Subdivision (d). Several types of statements which would otherwise literally fall within the definition are expressly excluded from it:

(1) *Prior statement by witness.* Considerable controversy has attended the question whether a prior out-of-court

statement by a person now available for cross-examination concerning it, under oath and in the presence of the trier of fact, should be classed as hearsay. If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem. The hearsay problem arises when the witness on the stand denies having made the statement or admits having made it but denies its truth. The argument in favor of treating these latter statements as hearsay is based upon the ground that the conditions of oath, cross-examination, and demeanor observation did not prevail at the time the statement was made and cannot adequately be supplied by the later examination. The logic of the situation is troublesome. So far as concerns the oath, its mere presence has never been regarded as sufficient to remove a statement from the hearsay category, and it receives much less emphasis than cross-examination as a truth-compelling device. While strong expressions are found to the effect that no conviction can be had or important right taken away on the basis of statements not made under fear of prosecution for perjury, Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), the fact is that, of the many common law exceptions to the hearsay rule, only that for reported testimony has required the statement to have been made under oath. Nor is it satisfactorily explained why cross-examination cannot be conducted subsequently with success. The decisions contending most vigorously for its inadequacy in fact demonstrate quite thorough exploration of the weaknesses and doubts attending the earlier statement. State v. Saporen, 205 Minn. 358, 285 N.W. 898 (1939); Ruhala v. Roby, 379 Mich. 102, 150 N.W.2d 146 (1967); People v. Johnson, 68 Cal.2d 646, 68 Cal.Rptr. 599, 441 P.2d 111 (1968). In respect to demeanor, as Judge Learned Hand observed in Di Carlo v. United States, 6 F.2d 364 (2d Cir. 1925), when the jury decide that the truth is not what the witness says now, but what he said before, they are still deciding from what they see and hear in court. The bulk of the case law nevertheless has been against allowing prior statements of witnesses to be used generally as substantive evidence. Most of the writers and Uniform Rule 63(1) have taken the opposite position.

The position taken by the Advisory Committee in formulating this part of the rule is founded upon an unwillingness to countenance the general use of prior prepared statements as substantive evidence, but with a recognition that particular circumstances call for a contrary result. The judgment is one more of experience than of logic. The rule requires in each instance, as a general safeguard, that the declarant actually testify as a witness, and it then enumerates three situations in which the statement is excepted from the category of hearsay. Compare Uniform Rule 63(1) which allows any out-of-court statement of a declarant who is present at the trial and available for cross-examination.

(A) Prior inconsistent statements traditionally have been admissible to impeach but not as substantive evidence. Under the rule they are substantive evidence. As has been said by the California Law Revision Commission with respect to a similar provision:

"Section 1235 admits inconsistent statements of witnesses because the dangers against which the hearsay rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation. The trier of fact has the declarant before it,

and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court. Moreover, Section 1235 will provide a party with desirable protection against the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case." Comment, California Evidence Code § 1235. See also McCormick § 39. The Advisory Committee finds these views more convincing than those expressed in People v. Johnson, 68 Cal.2d 646, 68 Cal.Rptr. 599, 441 P.2d 111 (1968). The constitutionality of the Advisory Committee's view was upheld in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Moreover, the requirement that the statement be inconsistent with the testimony given assures a thorough exploration of both versions while the witness is on the stand and bars any general and indiscriminate use of previously prepared statements.

(B) Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive but not as a substantive evidence. Under the rule they are substantive evidence. The prior statement is consistent with the testimony given on the stand, and, if the opposite party wishes to open the door for its admission in evidence, no sound reason is apparent why it should not be received generally.

(C) The admission of evidence of identification finds substantial support, although it falls beyond a doubt in the category of prior out-of-court statements. Illustrative are People v. Gould, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960); Judy v. State, 218 Md. 168, 146 A.2d 29 (1958); State v. Simmons, 63 Wash.2d 17, 385 P.2d 389 (1963);

California Evidence Code § 1238; New Jersey Evidence Rule 63(1)(c); N. Y. Code of Criminal Procedure § 393–b. Further cases are found in 4 Wigmore § 1130. The basis is the generally unsatisfactory and inconclusive nature of courtroom identifications as compared with those made at an earlier time under less suggestive conditions. The Supreme Court considered the admissibility of evidence of prior identification in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Exclusion of lineup identification was held to be required because the accused did not then have the assistance of counsel. Significantly, the Court carefully refrained from placing its decision on the ground that testimony as to the making of a prior out-of-court identification ("That's the man") violated either the hearsay rule or the right of confrontation because not made under oath, subject to immediate cross-examination, in the presence of the trier. Instead the Court observed:

"There is a split among the States concerning the admissibility of prior extra-judicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 ALR2d 449. It has been held that the prior identification is hearsay, and, when admitted through the testimony of the identifier, is merely a prior consistent statement. The recent trend, however, is to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination at the trial. See 5 ALR2d Later Case Service 1225–1228. . . ." 388 U.S. at 272, n. 3, 87 S.Ct. at 1956.

*56 F.R.D. 183, 295–297.*

■ There appears to be a high probability that the Proposed Rules of Evidence will become effective as Federal Rules of Evidence on July 1, 1973. Because of the

desirability of having our rules of evidence compatible with those governing the Federal courts, and in the light of what now appears to us to be the sounder and preferable rule, we hold that a prior statement of declarant which is inconsistent with testimony of the declarant at the trial, the declarant being subject to cross-examination concerning the statement, is admissible as substantive evidence of the truth of the matter asserted in the statement.

Most of the lost protections in the use of out-of-court statements as substantive evidence are largely regained where the declarant is a witness and can be confronted and cross-examined. The danger of faulty reproduction is negligible where there is competent evidence to show that the statement is his or, as in the instant case, the witness admits that the prior statement is his.

The declarant as a witness is also under oath and must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury. As stated in *Green, supra,* 399 U.S. 149, 159, 90 S.Ct. 1930, 1935, "the very fact that the prior statement was not given under a similar circumstance may become the witness' explanation for its inaccuracy—an explanation a jury may be expected to understand and take into account in deciding which, if either, of the statements represents the truth."

Also, with respect to the value of cross-examination of the declarant as a witness as opposed to cross-examination at the time the out-of-court statement was made, the court in *Green, supra,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, observed that the question is "not whether one can somehow imagine the jury in 'a better position,' but whether subsequent cross-examination at the defendant's trial will still afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement."

We quote further with approval from *Green, supra,* 399 U.S. 149, 160, 90 S.Ct. 1930, 1936:

"Similar reasons lead us to discount as a constitutional matter the fact that the jury at trial is foreclosed from viewing the declarant's demeanor when he first made his out-of-court statement. The witness who now relates a different story about the events in question must necessarily assume a position as to the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either disavows or qualifies his earlier statement. The jury is alerted by the inconsistency in the stories, and its attention is sharply focused on determining either that one of the stories reflects the truth or that the witness who has apparently lied once, is simply too lacking in credibility to warrant its believing either story. The defendant's confrontation rights are not violated, even though some demeanor evidence that would have been relevant in resolving this credibility issue is forever lost."

■ Accordingly, we hold that the testimony given by Karen Sprenger before the grand jury was not only admissible in evidence at the trial for the purposes of refreshing her recollection and impeaching her testimony, but it was also admissible as substantive evidence of the delivery of marijuana by the defendant to her as charged in Count Five.

■ It was within the province of the jury, as triers of the fact, to determine whether her sworn testimony given before the grand jury was the truth or whether her sworn testimony given before the court at the trial was the truth. The verdict of guilty indicates that the jury believed she testified truthfully before the grand jury and not at the trial. This evidence was sufficient to sustain a conviction under Count Five. However, counsel for the defendant contends that in advising the defendant not to testify in his own behalf, counsel relied upon the ruling by the trial court to the effect that the testimony given by Karen Sprenger before the grand jury

could not be considered as substantive evidence by the jury. In view of the record which shows no other substantive evidence of the defendant's guilt, there was no need for any refutation by the defendant. Under these circumstances, the interests of a fair trial and the interests of justice require a new trial on Count Five.

Accordingly, as to Count Five, the judgment of the trial court and the order denying motion for new trial are reversed.

Our ruling on the admissibility of the testimony given by Karen Sprenger before the grand jury renders moot other specifications of error asserted by the defendant with respect to Count Five.

We have reviewed the sufficiency of the evidence under Count Four, in which the defendant is charged with the sale of marijuana to one Joe Peabody. The conviction on this charge is based upon insufficient evidence.

■ The only evidence offered by the State with respect to Count Four consists of an inference to be drawn from the refusal of Joe Peabody to answer a direct question put to him by the prosecutor as to whether he had purchased marijuana from the defendant. Peabody claimed the privilege of the Fifth Amendment to the United States Constitution. The State argues that Peabody's response to the question could incriminate him only if he had purchased marijuana from the defendant, and therefore, by refusing to answer upon the claim of privilege, the jury was entitled to infer that he purchased marijuana from the defendant at the time in question.

■ In a criminal prosecution, the refusal by a witness other than the accused to answer a question on the ground that his answer will tend to incriminate him cannot alone be made the basis of any inference by the jury, either favorable to the prosecution or favorable to the defendant. Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881. See also Annotation in 24 A.L.R.2d 895; 58 Am.Jur., Witnesses, Sec. 56, n. 4; 98 C.J. S. Witnesses, Sec. 455, n. 29; West's Key, Witnesses 309; and 4 Jones on Evidence, Fifth Edition, Sec. 865.

As to Count Four, the judgment of the trial court is reversed and the order denying motion for new trial is affirmed.

As to Count Five, this case is remanded for a new trial conformable to this opinion.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.

WM. L. PAULSON, Justice, deeming himself disqualified, did not participate; EUGENE A. BURDICK, Judge of the Fifth Judicial District, sitting in his stead.